Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

## UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOISES SERRANO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>OPEN ROAD DELIVERY HOLDINGS, INC. d/b/a AMUSE, and DOES 1 through 10, inclusive, and each of them,<br><br><br>Defendant. | Case No. **2:22-cv-07245-SB-AS**<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Assigned to the Honorable Stanley Blumenfeld, Jr.<br><br>**DATE:**      AUGUST 11, 2023<br>**TIME:**       8:30 A.M.<br>**COURTROOM:** 6C<br><br>[Filed and Served Concurrently with Declaration of Todd M. Friedman; Declaration of Moises Serrano [Proposed] Order] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 11, 2023, at 8:30 a.m., before the United States District Court, Central District of California, Courtroom 6C, 350 W. 1st Street, Los Angeles, California 90012 (6th Floor) plaintiff Moises Serrano ("Plaintiff") will move this Court for an order granting preliminary approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: June 2, 2023

**The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion. Defendant does not oppose this motion.

Date: June 2, 2023

**The Law Offices of Todd M. Friedman, PC**

By: */s/ Todd M. Friedman*
Todd M. Friedman
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS & AUTHORITIES**................................................1

   **I.**    **INTRODUCTION** .............................................................................1

   **II.**   **STATEMENT OF FACTS** ....................................................................3

       **A.**    **Factual Background**................................................................3

       **B.**    **Proceedings to Date**...............................................................4

       **C.**    **Statement of Facts** ................................................................4

          **1.**    **The Texts at Issue** .......................................................4

          **2.**    **The Settlement Class** ...................................................5

             **a. The Settlement Class**……………………………………5

             **b. Class Membership Determination**…………………… 5

             **c. Settlement Payment**……………………………………5

           **3.**    **Monetary Benefit to Class Members and Class Notice**....6

          **4.**    **Scope of Release** ........................................................7

          **5.**    **Opportunity to Opt Out and Object** ................................8

          **6.**    **Payment of Notice and Administrative Costs** ..................8

          **7.**    **Class Representative's Application for Incentive Award**8

          **8.**    **Class Counsel's Application for Attorneys' Fees, Costs**

                **and Expenses** .............................................................9

          **9.**    **Cy Pres Distribution.** .................................................9

   **III.**  **ARGUMENT** ...............................................................................9

       **A.**    **The Legal Standards for Preliminary Approval of a**

            **Class Action Settlement**..........................................................9

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.**   **Liability is Highly Contested and Both Sides Face**
       **Significant Challenges in Litigating this Case** ...............12

**C.**   **Defendant's Agreement to Finance the Common Benefit**
       **Fund Provides a Fair and Substantial Benefit to the**
       **Class** ...........................................................................13

**D.**   **The Settlement was Reached as the Result of Arms-**
       **Length Negotiation, Without Collusion, with the**
       **Assistance of the Mediator** ................................................13

**E.**   **The Settlement Experienced Counsel Have Determined**
       **that the Settlement is Appropriate and Fair to the**
       **Class** ...........................................................................14

**F.**   **The Court Should Preliminarily Certify the Class for**
       **Purposes of Settlement** .......................................................**15**

**G.**   **The Proposed Class is Numerous.** ....................................15

**H.**   **The Commonality Requirement is Satisfied, Because**
       **Common Questions of Law and Fact Exist.** ...................15

**I.**   **The Typicality Requirement is Met.** ................................16

**J.**   **The Adequacy Requirement is Satisfied.** .........................17

**K.**   **Common Questions Predominate, Sufficient to Certify a**
       **Class for Settlement Purposes Only.** .............................17

**L.**   **Class Treatment for Settlement Purposes is Superior to**
       **Individual Resolutions.** ......................................................18

**M.**   **The Proposed Class Notice is Consistent with Ninth**
       **Circuit Requirements and Provides Adequate Notice** ..19

**N.**   **The Court Should Preliminarily Certify the Class for**

Purposes of Settlement. .......................................................22

O.    The Court Should Appoint Postlethwaite & Netterville
      as the Settlement Administrator ....................................23

P.    Final Approval Hearing Should be Scheduled ................23

IV.    CONCLUSION .............................................................................23

## <u>Table of Authorities</u>

**Cases**

*Amchem Prods. Inc. v. Woodward*,

   521 U.S. 591 (1997) ...........................................................................19

*Barani v. Wells Fargo Bank, N.A.*,

   2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) .......................................21

*Boyd v. Bechtel Corp.*,

   485 F. Supp. 610, 622 (N.D. Cal. 1979) ............................................11

*Elkins v. Equitable Life Ins. of Iowa*,

   1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ......................................19

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011, 1026 (9th Cir. 1998).......................................... passim

*Harris v. Palm Springs Alpine Estates, Inc.*,

   329 F.2d 909, 913-14 (9th Cir. 1964).................................................15

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,

   163 F.R.D. 200 (S.D.N.Y. 1995).........................................................10

*Kirkorian v. Borelli*,

   695 F.Supp. 446 (N.D. Cal.1988).......................................................11

*Lerwill v. Inflight Motion Pictures, Inc.*,

   582 F.2d 507 (9th Cir. 1978)..............................................................22

*Linney v. Cellular Alaska P'ship*,

   151 F.3d 1234 (9th Cir. 1998)............................................................12

*Lo v. Oxnard European Motors, LLC*,

   2012 WL 1932283 (S.D. Cal. May 29, 2012) ....................................20

Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,

   244 F.3d 1152 (9th Cir. 2001)......................................................17, 18

*Mullane v. Central Hanover Bank & Trust Co.*,

 339 U.S. 306 (1950) ..........................................................................19

*Officers for Justice v. Civil Service Comm'n*,

688 F.2d 615 (9th Cir. 1982) ..............................................................11

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*,

323 F. Supp. 364 (E.D. Pa. 1970)........................................................11

*Schaffer v. Litton Loan Servicing, LP*,

2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ..................................20

*Silber v. Mabon*,

18 F.3d 1449 (9th Cir. 1994) ..............................................................19

*Strube v. Am. Equity Inv. Life Ins. Co.*,

226 F.R.D. 688 (M.D. Fla. 2005) ........................................................19

*Torrisi v. Tucson Electric Power Co.*,

8 F.3d 1370 (9th Cir. 1993) ................................................................21

*Utility Reform Project v. Bonneville Power Admin.*,

869 F.2d 437 (9th Cir. 1989) ..............................................................10

*Valentino v. Carter-Wallace*,

 97 F.3d 1227 (9th Cir. 1996) ..............................................................18

*Wehner v. Syntex Corp.*,

117 F.R.D. 641 (N.D. Cal. 1987) ........................................................16

*West Va. v. Chas. Pfizer & Co.*,

440 F.2d 1079, 1086 (2d Cir. 1971) ....................................................11

*Wireless Facilities, Inc. Sec. Litig. II*,

253 F.R.D. 607 (S.D. Cal. 2008)..............................................14, 15, 17

*Zincser v. Accufix Research Institute, Inc.*,

253 F.3d 1188 (9th Cir. 2001)..............................................................18

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

v

**Statutes**

Fed. R. Civ. Proc. 23(e) ............................................................................9

Federal Rule of Civil Procedure 23(b)(3) ........................................ passim

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*........................ passim

**Other Authorities**

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004)................9,10

*Moore's Federal Practice – Civil* § 23.165[3] (3d ed.)...........................................11

*Newberg on Class Actions* § 11.25 *et seq*., and § 13.64 (4th ed. 2002 and Supp.

2004) ...................................................................................................10

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

Plaintiff Moises Serrano (hereinafter "Plaintiff," "Serrano" or "Class Representative"), individually and on behalf of the "Settlement Class" (as defined below), hereby submits this motion for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation") and of certification of the proposed settlement class. Defendant Open Road Delivery Holdings, Inc. (hereinafter referred to as "Amuse" or "Defendant") does not oppose Plaintiff's motion (Plaintiff and Defendant shall collectively be referred to as the "Parties"). The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement").[1] *See Declaration of Todd M. Friedman* (*"Friedman Decl."*), ¶ 11, Ex. A.

 The proposed Settlement resulted from the Parties' participation in an all-day mediation session before the Honorable Suzanne Segal (Ret.) of Jams, and subsequent settlement discussions. The Settlement provides for a substantial financial benefit to the Class Members. The Settlement Class consists of 1,772 individuals who are the record subscribers of unique United States cell phone numbers that were sent text messages by Defendant after revoking consent, between October 3, 2018, and April 12, 2023 (the "Class Period"). For purposes of this Settlement, the cell phone subscribers of these telephone numbers constitute the members of the Settlement Class.

The compromise Settlement reached with the guidance of Judge Segal will create a Settlement Fund to be established by Defendant in the amount of $400,000.

The amount of the Settlement Fund shall not be reduced as a result of any member(s) of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason.  The Settlement Fund will pay for a Settlement

---

[1] Unless otherwise specified, capitalized terms used in this memorandum are intended to have the same meaning ascribed to those terms in the Agreement.

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1

Administrator, Postlethwaite & Netterville, ("P&N"), which will be responsible for providing notice to the Settlement Class, providing and disbursing settlement checks to Class Members who do not opt-out, creating and maintaining a Settlement Website, maintaining a toll-free telephone number, preparing an Opt-Out List, preparing a list of persons submitting objections to the settlement and acting as a liaison between Class Members and the Parties regarding the settlement.  Settlement members who do not opt-out will receive a share of the Settlement Fund in the form of a check (after any attorneys' fees and costs awarded by the Court, any Service Award to Class Representative, and any costs of claims administration are deducted from the Settlement Fund) in an amount proportional to the number of texts the Class Member received of the total number of texts received by participating Settlement Class Members. Settlement class members will not be required to submit a claim form to receive said settlement benefits. Plaintiff Moises Serrano will request an incentive payment of $10,000.00 (subject to Court approval) for bringing and litigating this action. Class Counsel will request an attorneys' fee reimbursement award of $100,000 (*i.e.*, 25% of the total settlement amount – the benchmark in the Ninth Circuit for fees in a common fund class action settlement) and litigation costs (not to exceed $10,000), subject to Court approval, to be paid out of the Settlement Fund.  Any unclaimed funds from uncashed settlement checks shall be delivered to a *cy pres* recipient selected by the parties and approved by the Court. This *cy pres* payment from the Settlement Fund is after all settlement costs and direct payments to the Settlement Class are paid.

In consideration for the Settlement Fund, Plaintiff, on behalf of the proposed Settlement Class (the "Class"), will have judgment entered on their claims in the Litigation and unconditionally release and discharge Defendant and other Released Parties from all claims relating to the Litigation.

While Plaintiff is confident of a favorable determination on the merits, he has determined that the proposed Settlement provides significant benefits to the

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

2

Settlement Class and is in the best interests of the Settlement Class. Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims. Similarly, as evidenced by the Agreement, Amuse believes that it has substantial and meritorious defenses to Plaintiff's claims but has determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Plaintiff believes that the proposed Settlement satisfies all criteria for preliminary approval. Accordingly, Plaintiff moves this Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of Class Notice, and scheduling a Final Approval Hearing.

## II.  STATEMENT OF FACTS

### A.  Factual Background

Plaintiff alleges Amuse violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") by sending text messages to the cellular telephones without obtaining "prior express consent," using an "automatic telephone dialing system" and/or a prerecorded or artificial voice.  Plaintiff further alleges that Amuse violated the TCPA by sending text messages to consumers whose cell phone numbers were registered on the federal Do Not Call Registry, or who were texted after requesting not to receive calls or texts. Plaintiff contends that these claims can be adjudicated on a classwide basis because the violative texts were all commonly sent as a result of a software error in the platform provided by Happy Cabbage that Amuse used to send texts.  Plaintiff contends he and the Class are entitled to statutory damages pursuant to the TCPA.

Amuse has vigorously denied and continues to deny that it violated sections b or c of the TCPA in placing calls and/or texts to Class Members, and denies all

charges of wrongdoing or liability asserted against it in the Action.

**B.    Proceedings to Date**

Plaintiff filed the initial class action complaint ("Complaint") on October 4, 2022. In the Complaint, Plaintiff alleged causes of action for unintentional and intentional violations of the TCPA. Based on those allegations, Plaintiff sought $500 per violation and $1,500 for each intentional violation, as well as injunctive relief. Plaintiff's claims were brought on behalf of a class of individuals who allegedly received text messages to their mobile phones from Amuse without consent using an automatic telephone dialing system or artificial or prerecorded voice technology. (Dkt. No. 1). Plaintiff also alleged that Amuse had placed calls or text messages to cell phone numbers registered on the federal Do Not Call Registry. On February 22, 2023, Amuse filed a combined Motion to Compel Arbitration or, in the alternative, Partial Motion to Dismiss (Dkt. No. 20), which Plaintiff opposed on March 2, 2023. (Dkt. No. 25). After full briefing on the matter, this Court denied Amuse's Motion to Compel Arbitration on March 31, 2023 (Dkt. No. 35). Amuse also separately filed A Motion to Dismiss Plaintiff's Amended Complaint, on March 16, 2023 (Dkt. No. 30), which Plaintiff opposed on March 30, 2023. (Dkt. No. 33).

The Parties attended mediation with the Hon. Suzanne Segal, Ret. of Signature Resolution on April 12, 2023, and committed to trying to resolve the claims on behalf of the class. Through her guidance, this Settlement was reached. *See Friedman Decl*, ¶ 11. As set forth below, Plaintiff respectfully requests that the Court approve the Settlement.

**C.    Statement of Facts**

**1.    The Texts at Issue**

Plaintiff alleges that, between October 3, 2018 and April 12, 2023, Amuse sent text messages to cell phones using an ATDS and an artificial or rerecorded voice to cell phones without the prior express of the recipients. Amuse also sent text messages to individuals who had requested not to receive text messages. Amuse

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

4

maintained a list of such requests, and relied upon the software of third-party vendor Happy Cabbage to ensure that do-not-call requests were honored. Specifically, informal exchanges of information showed that when Defendant switched vendors from its prior vendor to Happy Cabbage, a list of consumers who had previously opted out of receiving text messages, as indicated from the unsub sms master.csv file, were not included in the opt out parameters for new texting campaigns as the result of a bug in Happy Cabbage's software, and were therefore texted in error

### 2.    The Settlement Class

#### a.    The Settlement Class

The "Settlement Class" is defined in the Agreement as follows:

*"All Persons in the United States whose phone number appears on the unsub sms master.csv provided in discovery, and who thereafter received a text message from the Happy Cabbage Platform, as delineated in the call logs provide in discovery, between October 3, 2018 and April 12, 2023."* (Agreement § 2.1, p. 4.)[2]

#### b.    Class Membership Determination

The Settlement Class consists of all persons who were called or sent a text message on their cellular phone by Amuse after revoking consent during Class Period, as stated above. Based on information provided by Amuse and its counsel, the number of such unique cell phone numbers is approximately 1,772. This data was confirmed by Plaintiff via a production of call record data in discovery directly from Amuse and was analyzed by Plaintiff's experts.

#### c.    Settlement Payment

Under the Proposed Settlement, Amuse agrees to establish a Settlement Fund

---

[2] While this definition is highly technical, it had to be defined as such to ensure that it was narrowly construed to encompass only those consumers who were subject to discovery and upon which this litigation was, at root, intended to be based. This case is about consumers who were texted after having revoked consent. This was the most accurate way of defining those consumers without being overbroad.

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

5

in the amount of $400,000 (Agreement § 4.1, p. 5) in order to fund the following: (1) providing notice to Class Members; (2) providing settlement checks to Class Members entitled to receive a settlement check; (3) creating and maintaining the Settlement Website; (4) maintaining a toll-free telephone number; (5) to pay the proposed $10,000 Incentive Payment to the Plaintiff (Agreement § 7, p.6); and (6) payment of the proposed Attorneys' Fees of $100,000 (25% of the Settlement Fund) and litigation costs of up to $10,000 (Agreement § 6, p. 6). *See Friedman Decl*, ¶¶ 12-24. Any funds remaining after payment of all settlement costs and Payments to the Settlement Class shall be paid to Electronic Privacy Information Center (EPIC), a non-profit organization dedicated to advancing consumer privacy interests. (Agreement § 15.5, p.12.)[3]

The amount of the Settlement Fund shall not be reduced as a result of any member(s) of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason. (Agreement § 4.4, p. 6.)

### 3.    Monetary Benefit to Class Members and Class Notice

The Settlement Agreement provides for $400,000 in cash benefits (minus administration costs, attorney's fees, and litigation costs) to Class Members after the claims period. Class Members will receive a share of the Settlement Fund based on the number of text messages they were sent according to the Happy Cabbage master.csv records, as a proportion of the total number of texts sent to all Participating Class Members per those same records. (Agreement §5).[4]  Based on a

---

[3] Class Members will be automatically sent checks for their settlement shares.  It is anticipated that the checks will largely be cashed, especially since the contact information data for Class Members is reliable.  However, some people may not cash checks, and so any residual funds that are left uncashed are proposed to go to cy pres.  A second distribution was contemplated by counsel but given that it is expected to be a relatively small amount, the expense of sending more checks and the possibility that then additional funds will be left over for yet another distribution will add expense and result in a lesser total outlay of benefits.
[4] For instance, if there were 100 total texts sent to the Class, and one Member

1  review and analysis of the data by Plaintiff's experts, there are approximately 1,772

2  unique Class Members with cell phone numbers that received texts from Amuse.

3  The Claims Administrator will provide notice first via First Class U.S. Mail within

4  30 days of the Preliminary Approval Order. (Agreement § 9.1.4 p. 7.)  Claims Forms

5  are <u>not required</u> for Class Members to receive payment. *See Friedman Decl*, ¶¶ 12-

6  24.[5]  The Settlement Website will be maintained for at least 180 days. (Agreement

7  § 9.2.2, p. 8).

8  ### 4.    <u>Scope of Release</u>

9  The scope of the release by all Class Members who do not request exclusion

10  includes any and all claims against the Released Parties arising out of calls and/or

11  text messages sent on behalf of Amuse to cellular phone numbers during the Class

12  Period. (Agreement §§ 1.25, 1.26, 1.27 and 16, pp. 3-4 and 12-13). The release

13  covers known and unknown claims in connection with the Amuse calls and/or text

14  messages to cellular phones during the Class period, specifically releasing claims

15  under the TCPA under both Sections (b) and (c), which govern prohibitions on

16  autodialer calls, and solicitation calls placed to consumers' numbers that are listed

17  on the do not call list.  The release of claims does not extend to claims beyond those

18  that related specifically to conduct in the pleadings, i.e. the transmission of calls and

19  texts to consumers, by Amuse. Friedman Decl. Ex. A at § 16.1 and 16.2.

20

21

———————————

22  received 5 of those texts, they would receive 5% of the fund.  A Class Member who

23  received one text message would receive 1% of the fund.  This was the most

24  equitable way of apportioning damages to Class Members to ensure distribution was

25  proportionate to the injury.  This is similar to how wage and hour class action

26  settlements apportion distribution based on number of work weeks.

[5] Counsel consulted with the administrator and it was cheaper to send everybody a

27  check directly.  In consumer class actions the data for Class Members is not always

28  so reliable as it is here, and so often a direct check is not possible.  But it is preferable to send people a check directly without a claims form so every Class member benefits, especially when it costs less to forego a claims process.

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

7

### 5.    Opportunity to Opt Out and Object

Class Members who Opt Out must postmark before the Opt-Out and Objection Deadline, which will be 130 days following entry for the Preliminary Approval Order (Agreement § 11, p. 9); similarly, Class Members who wish to object must meet the same deadline (Agreement § 12, pp. 9-10). Any Objection must set for the name and case number of this matter, the objecting Class Member's name, address, telephone number and all arguments, citations and evidence supporting the objection. Furthermore, the Objection shall include: whether the objector intends to appear at the hearing, with or without counsel; the name and case number of any other proposed class action settlement the Class Member submitted an objection to; and whether any such objection was submitted on the Class Member's behalf or on behalf of a represented third party. (*Id*.)

### 6.    Payment of Notice and Administrative Costs

Amuse will make a single payment of $400,000 into an escrow account held by the Settlement Administrator. (Agreement § 4, pp. 5-6). The Settlement Administrator will use these funds to administer all costs of the settlement, including providing Class Notice, maintaining the website and toll-free number, and arranging for payments to Class Members. (*Id*.)  The funds shall also be used to cover the Attorneys' Fee Award to Class Counsel and the Incentive Award to plaintiff Moises Serrano. (*Id*.)

### 7.    Class Representative's Application for Incentive Award

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $10,000 to be distributed to the Class Representative, subject to Court approval. Amuse has agreed not to oppose the request as long as it is not greater than $10,000.  (Agreement § 7, p. 6).

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

8

**8.     Class Counsel's Application for Attorneys' Fees, Costs and Expenses**

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees in the amount of $100,000 (25% of the Settlement Fund) and litigation costs of less than $10,000. (Agreement § 6, p. 6). Pursuant to the proposed Settlement, Amuse will not oppose the application, as long as it does not exceed this stated amount. (*Id*.)

**9.     Cy Pres Distribution.**

Under the proposed Settlement, any funds remaining after payment of all settlement costs and Payments to the Settlement Class shall be paid to Electronic Privacy Information Center (EPIC). (Agreement § 15.5, p.11). EPIC is a public interest research center in Washington, DC seeking to protect privacy, freedom of expression, and democratic values in the information age. EPIC focuses their efforts on protecting consumer privacy and has played a leading role in developing the authority of the Federal Trade Commission to address emerging privacy issues and to safeguard the privacy rights of consumers. EPIC has also long advocated for a comprehensive U.S. privacy law. They are a worthy cy pres recipient in this case.

**III.   ARGUMENT**

**A.     The Legal Standards for Preliminary Approval of a Class Action Settlement**

A class action may not be dismissed, compromised, or settled without the approval of the court. Fed. R. Civ. Proc. 23(e). Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval, dissemination of notice to class members, and a fairness hearing.   *Manual*, §§ 21.632, 21.633, 21.634. The purpose of the Court's preliminary evaluation of the

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

9

settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*"). The Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon*"). Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties,

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

10

1    and that the settlement, taken as a whole, is fair, reasonable and adequate to all

2    concerned." *Id.* at 1027.

3         Preliminary approval does not require the Court to make a final determination

4    that the settlement is fair, reasonable, and adequate. Rather, that decision is made

5    only at the final approval stage, after notice of the settlement has been given to the

6    class members and they have had an opportunity to voice their views of the

7    settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore,

8    *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.).  Thus, in considering a

9    potential settlement, the Court need not reach any ultimate conclusions on the issues

10   of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer &*

11   *Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits,

12   *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at 625.  Preliminary approval

13   is merely the prerequisite to giving notice so that "the proposed settlement . . . may

14   be submitted to members of the prospective class for their acceptance or rejection."

15   *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp.

16   364, 372 (E.D. Pa. 1970).

17        Preliminary approval of the settlement should be granted if, as here, there are

18   no "reservations about the settlement, such as unduly preferential treatment of class

19   representatives or segments of the class, inadequate compensation or harms to the

20   classes, the need for subclasses, or excessive compensation for attorneys." *Manual*

21   *for Complex Litigation* § 21.632, at 321 (4th ed. 2004).

22         Furthermore, the opinion of experienced counsel supporting the settlement is

23   entitled to considerable weight. *See., e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446

24   (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the

25   court's determination of the reasonableness of the settlement); *Boyd v. Bechtel*

26   *Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs'

27   counsel should be given a presumption of reasonableness).

28        The decision to approve or reject a proposed settlement "is committed to the

1  sound discretion of the trial judge[.]" *See Hanlon*, 150 F.3d at 1026. This discretion

2  is to be exercised "in light of the strong judicial policy that favors settlements,

3  particularly where complex class action litigation is concerned," which minimizes

4  substantial litigation expenses for both sides and conserves judicial resources. *See*

5  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations

6  omitted).

7      Based on these standards, Plaintiff respectfully submits that, for the reasons

8  detailed below, the Court should preliminarily approve the proposed Settlement as

9  fair, reasonable and adequate.

10  **B.    Liability is Highly Contested and Both Sides Face Significant**

11  **Challenges in Litigating this Case**

12      Defendant has vigorously contested the claims asserted by Plaintiff in this

13  Litigation from multiple angles, which are described in detail in the

14  contemporaneous declaration of Mr. Friedman. See Friedman Decl. ¶¶ 41-47. Most

15  importantly, Defendant contested that its dialing system was an ATDS under the

16  TCPA, as evidenced by its Motion to Dismiss, and that the text messages sent were

17  not artificial or prerecorded voice messages. Defendant also contended that it had a

18  comprehensive policy regarding its Do No Call practices, and so the Section c

19  claims would fail. Defendant also shared financial information with Plaintiff during

20  mediation and sufficiently demonstrated that it would not be able to withstand an

21  adverse class judgement and could only afford a modest settlement in order to

22  remain operational.  *Id*.

23      While both sides strongly believed in the merits of their respective cases,

24  there are clearly numerous palpable risks to both sides in continuing the Litigation.

25  *Id*. If the Litigation were to continue, challenges would likely be made to any class

26  certification motion made by Plaintiff, thereby placing in doubt whether

27  certification of a class could be obtained and/or maintained in the Litigation.  Also,

28  additional substantive challenges to the claims might be raised, including a

challenge on summary judgment. The law is fluid in many of these areas, which means that inevitably there would be appeals that would drag on for years. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel supports the Settlement and seeks its Preliminary Approval. *Id.*

Similarly, Amuse believes that it has strong and meritorious defenses not only to the action as a whole, but also as to class certification and the amount of damages sought. However, Amuse recognizes that if a class were certified, the potential amount of damages could be significantly higher than the settlement amount at issue.

The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the class might not recover. Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

**C.    Defendant's Agreement to Finance the Common Benefit Fund Provides a Fair and Substantial Benefit to the Class**

As set forth above, Amuse has agreed to pay $400,000 to fund the settlement, which includes notice and claims administration costs, creating and maintaining a Settlement Website and toll-free number, an Incentive Award to Plaintiff Moises Serrano in the amount of $10,000 and attorneys' fees in the amount of $100,000 and reimbursement of litigation costs of up to $10,000. *See Friedman Decl*, ¶12.

**D.    The Settlement was Reached as the Result of Arms-Length Negotiation, Without Collusion, with the Assistance of the Mediator**

The proposed Settlement is the result of intensive arms-length negotiation, including an all-day mediation session before the Hon. Suzanne Segal, Ret. of Signature Resolution on April 12, 2023. With the guidance of Judge Segal, and

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

13

working independently of the Court, the Parties were able to reach a proposed resolution of this case. *See Friedman Decl*, ¶¶ 9-11. Class Counsel are satisfied that the information provided about the number of cell phones texted is accurate, given that it involved a complete production of all call/text data to Plaintiff's experts, who used reliable and accepted methods that have numerously been approved by courts to scrub the lists for cell phone numbers to determine class membership.  The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly indicates that there was no collusion. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."); see also *Nat'l Rural Telecoms Corp.*, 221 F.R.D. at 528.[6]  "[D]istrict courts *must* apply a more searching review for a pre-class certification settlement."  *Saucillo v. Peck*, 25 F.4th 1118, 1133 (9th Cir. 2022) (holding that blanket presumptions of fairness without such a searching review are in error and holding that such elements as arms' length negotiations and experience of counsel should be treated as a factor instead). "Absent evidence of fraud or collusion, courts also should accord 'great weight' to the recommendations of counsel." *Medeiros v. HSBC Card Servs.*, No. 2017 U.S. Dist. LEXIS 178484, at *16 (C.D. Cal. Oct. 23, 2017).

### E. The Settlement Experienced Counsel Have Determined that the Settlement is Appropriate and Fair to the Class

The Parties are represented by counsel experienced in complex class action

---

[6] Recent Ninth Circuit developments suggest that courts should not "presume" fairness and still must conduct a searching inquiry of a settlement, but nonetheless the opinions of counsel, experience of counsel, and amount of discovery and arms' length negotiations all remain *factors* under the advisory comments to Rule 23(e). In the aggregate, where a settlement shows no signs of collusion and a non-disproportionate remedy going to the Class, as opposed to counsel, as is the case here, there remains a *strong inference of fairness*.

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

14

litigation. Class Counsel has extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the TCPA.  *See Friedman Decl*, ¶¶ 49-54. Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class Members. *See Friedman Decl*, ¶¶ 37-38.

### F.    The Court Should Preliminarily Certify the Class for Purposes of Settlement

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met. *Id.* As explained below, class certification is appropriate here because the Proposed Settlement meets the requirements of Rule 23(a) and Rule 23(b)(3) for settlement purposes.

### G.    The Proposed Class is Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  Here, the Settlement Class consists of 1,772 mobile subscribers that received phone calls and/or text messages in connection with the campaigns during the Class Period. Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

### H.    The Commonality Requirement is Satisfied, Because Common Questions of Law and Fact Exist.

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal

issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, for purposes of settlement, the proposed Class Members' claims stem from the same factual allegation - specifically that Amuse *allegedly* initiated solicitation phone calls and text messages using an autodialer to Class Members' cellular phones without their prior express consent or without an established business relationship arising from such communications occurring post opt-out, during the Class Period.

Plaintiff's claims also present questions of law that are common to all members of the Class for settlement purposes, including: (1) whether Amuse violated the TCPA (strict liability); (2) whether Amuse willfully or knowingly violated the TCPA; and (3) whether Amuse had "prior express consent" or an established business relationship before making the calls. The Settlement Class Members all seek the same remedy. Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class. *See Hanlon*, 150 F. 3d at 1019-20.

## I.    The Typicality Requirement is Met.

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. For purposes of settlement, Plaintiff's claims are typical of the class because they arise from the same factual basis – calls were made to Plaintiff's cell phone, which is on the do not call list, using autodialing equipment without consent or an established business relationship – and are based on the same legal theory – the calls allegedly violated the TCPA. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). The Class Representative claims that he was contacted by Amuse via call and text message on his cellular telephone via an automatic telephone dialing system without his consent and without an established business relationship, despite his number being listed on the do not call registry and despite his opting out of receiving future solicitation messages. Accordingly, the

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

16

Class Representative's claims are typical of those of the Settlement Class. Thus, the typicality requirement is satisfied for purposes of certifying a settlement class.

### J.    The Adequacy Requirement is Satisfied.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiff and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiff's claims are typical of those of other Settlement Class Members. In addition, Plaintiff and Class Counsel have been prosecuting this Litigation vigorously on behalf of the Class. Plaintiff and Class Members share the common goal of protecting and improving consumer and privacy rights throughout the nation, and there is no conflict among them. Class Counsel have extensive experience in consumer litigation, including the prosecution of class actions seeking to protect privacy and consumer rights, including TCPA actions. Class Counsel is qualified to represent the interests of the Class. Rule 23(a)(4) is therefore satisfied for purposes of certifying a settlement class.

### K.    Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only.

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

17

*1152, 1162 (9th Cir. 2001).* Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), amended, 273 F. 3d 1266 (9th Cir. 2001).

Here the central inquiries for purposes of the Proposed Settlement are whether Amuse violated the TCPA by using automated technology (*i.e.* an autodialer) to place calls and send text messages to the cellular phones of Class Members without their consent after they opted out of receiving such future communications. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

**L.    Class Treatment for Settlement Purposes is Superior to Individual Resolutions.**

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

**1**  (C) the desirability or undesirability of concentrating the litigation of the claims in
**2**  the particular forum; and (D) the difficulties likely to be encountered in the
**3**  management of a class action. Fed. R. Civ. P. 23(b)(3).

**4**  However, when a court reviews a class action settlement, the fourth factor
**5**  does not apply. In deciding whether to certify a settlement class action, a district
**6**  court "need not inquire whether the case, if tried, would present intractable
**7**  management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620
**8**  (1997). "With the settlement in hand, the desirability of concentrating the litigation
**9**  in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-
**10** 296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube*
**11** *v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule
**12** 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of
**13** settlement'") (citation omitted). Here, most of the Rule 23(b)(3)(A), (B) and (C)
**14** factors all favor class certification:

- Any Settlement Class Member who wishes to pursue a separate action
**15**
**16** can opt out of the Settlement.

- Plaintiff believes this forum is appropriate, and Defendant does not
**17**
**18** oppose the forum.

**19** **M.    The Proposed Class Notice is Consistent with Ninth Circuit**
**20** **Requirements and Provides Adequate Notice**

**21** Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the
**22** court must order the "best notice practicable" under the circumstances. Rule
**23** 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."
**24** *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in
**25** a manner "reasonably calculated, under all the circumstances, to apprise interested
**26** parties of the pendency of the action and afford them an opportunity to present their
**27** objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314

**28**

1  (1950). "Adequate notice is critical to court approval of a class settlement under

2  Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

3      Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a

4  reasonable manner to all class members who would be bound by the proposal."

5  Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice. The

6  notice must concisely and clearly state in plain, easily understood language: (i) the

7  nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or

8  defenses; (iv) that a class member may enter an appearance through counsel if the

9  member so desires; (v) that the court will exclude from the class any member who

10 requests exclusion, stating when and how members may elect to be excluded;

11 (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a

12 class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

13     The Settlement Administrator shall disseminate or arrange for the

14 dissemination of Class Notice via postcard in a form materially consistent with

15 Exhibits A and B to the Agreement. The Class Notice here satisfies each of the

16 requirements of Rule 23(c)(2)(B) above. Further, mailed postcard notice has

17 routinely been held to be adequate notice to a Settlement Class. *See Schaffer v.*

18 *Litton Loan Servicing, LP*, CV 05-07673 MMM JCX, 2012 WL 10274679, at *8

19 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class members were sent

20 postcards that directed them to a settlement website); *Lo v. Oxnard European*

21 *Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29,

22 2012) (final approval of class settlement using postcard notice and settlement

23 website).

24     The Parties possess records of all the cellular telephone numbers called

25 during the marketing campaigns. Defendant maintains name and address

26 information for many of these individuals. For those for whom a valid address is

27 not maintained by Defendant, the Settlement Administrator will employ reverse

28 telephone look-up procedures to identify the subscriber names and physical

addresses associated with the mobile numbers identified on the Class List. The Settlement Administrator will run the names and addresses obtained via this process through the National Change of Address (NCOA) database. To the extent any physical addresses identified through reverse look-up are no longer valid, the Settlement Administrator will send Class Notice to any forwarding addresses that are provided. *See generally Barani v. Wells Fargo Bank, N.A.*, Case No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving settlement in TCPA class action using reverse lookup to locate class members).

Further notice will also be provided via the Settlement Website, which will contain the Q & A Notice (Ex. B to the Agreement), the Settlement Agreement, the Preliminary Approval Order, and Plaintiff's fee brief. Further, pursuant to the Agreement "any other materials the Parties agree to include" may be put on the Website. (Agreement § 9.2.2, p. 8).

The notices and settlement documents will be disseminated and posted on the Settlement Website sufficiently prior to the Final Approval Hearing to give Settlement Class Members the opportunity to comment on the Settlement, or to opt out and preserve their rights. Specifically, Settlement Class Members will have 100 days from the time dissemination of Class Notice has been completed to opt out of the settlement or object. *Cf. Torrisi v. Tucson Electric Power Co*., 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) (citing *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before the deadline for opting out of the settlement)). Further, the Settlement Website shall be maintained and accessible to Settlement Class Members during this time and through the conclusion of the settlement proceedings in this case.

This notice program was designed to meaningfully reach the largest number of Settlement Class Members possible. Since the calls/text messages at issue were

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

21

made within the past four years, and Defendant has name and address information for the entire Class, it is anticipated that over 95% of the Class will be reached with the direct Notice plan. To the extent people have changed addresses, which will be easy to identify using the NCOA database and will be performed by the Administrator. Mailed postcard notice will likely reach most if not all Settlement Class Members.  The concurrent dissemination of the Long Form Class Notice on the Settlement Website, combined with the Class Notice, satisfies the requirements of due process, and constitutes the best notice practicable under the circumstances. The Settlement Administrator shall prepare and file a declaration prior to the Final Approval Hearing certifying that the notice program has been properly administered in accordance with this Agreement, this Court's Orders, and as described herein.

## N. __The Court Should Preliminarily Certify the Class for Purposes of Settlement.__

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy of representation requirement is met here. For settlement purposes, Class Counsel moves for Plaintiff Moises Serrano to be preliminarily appointed as the Class Representative. Class Counsel requests that Todd M. Friedman and Adrian Bacon of The Law Offices of Todd M. Friedman, P.C. preliminarily be appointed as Class Counsel for purposes of the Settlement. Plaintiff's counsel has extensive experience sufficient to be appointed as Class Counsel.  Plaintiff Serrano understands the obligations of serving as a class representative, has adequately represented the interests of the putative class, and has retained experienced counsel. Plaintiff has no antagonistic or conflicting interests with the Settlement Class, and

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

22

all members of the Settlement Class are eligible to receive the same benefits.

**O.** **The Court Should Appoint Postlethwaite & Netterville as the Settlement Administrator**

The proposed Agreement recommends that the Court appoint Postlethwaite & Netterville, Inc. to serve as the Settlement Administrator. Postlethwaite & Netterville specializes in providing administrative services in class action litigation and has extensive experience in administering consumer protection and privacy class action settlements. Defendant does not oppose this request.

**P.** **Final Approval Hearing Should be Scheduled**

The last step in the settlement approval process is the formal fairness or Final Approval Hearing, at which time the Court will hear all evidence and argument, for and against, the proposed Settlement. Plaintiff requests that the Court grant preliminary approval of the Settlement and schedule a Final Approval Hearing to be held not before 130 days after the date of entry of the Preliminary Approval Order, in order to allow sufficient time for providing CAFA Notice, the toll-free number and the Settlement Website, and completion of the period for class members to submit exclusion requests and objections.

**IV.** **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order preliminarily approving the proposed Settlement and certifying a class for settlement purposes.

Date: June 2, 2023                              The Law Offices of Todd M. Friedman, PC

                                               By:  _/s/ Todd M. Friedman_
                                               Todd M. Friedman
                                               _Attorneys for Plaintiffs_

1

## <u>CERTIFICATE OF SERVICE</u>

2

Filed electronically on this 2nd day of June, 2023, with:

3

4

United States District Court CM/ECF system

5

Notification sent electronically on this 2nd day of June, 2023, to:

6

Honorable Judge Stanley Blumenfeld Jr.

7

United States District Court
Central District of California

8

9

Brian Patrick Cadigan
Reed Smith LLP

10

Email: bcadigan@reedsmith.com

11

Timothy R. Carwinski

12

Reed Smith LLP
Email: tcarwinski@reedsmith.com

13

14

15

<u>s/Todd M. Friedman</u>
Todd M. Friedman, Esq.

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE