Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

## UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOISES SERRANO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OPEN ROAD DELIVERY HOLDINGS, INC. d/b/a AMUSE, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:22-cv-07245-SB-AS<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Assigned to the Honorable Stanley Blumenfeld, Jr.<br><br>**DATE:**        DECEMBER 1, 2023<br>**TIME:**        8:30 A.M.<br>**COURTROOM:** 6C<br><br>[Filed and Served Concurrently with Declaration of Todd M. Friedman; Declaration of Brad Madden; [Proposed] Order] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, December 1, 2023 at 8:30 a.m., before the United States District Court, Central District of California, Courtroom 6C, 350 W. 1st Street, Los Angeles, California 90012 (6th Floor) plaintiff Moises Serrano ("Plaintiff") will move this Court for an order granting final approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

The Parties met and conferred, and Defendant indicated that it would not be opposing this Motion.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: November 10, 2023

**The Law Offices of Todd M. Friedman, PC**

By: _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**INTRODUCTION**................................................................1

**PROCEDURAL HISTORY**.................................................2

**SETTLEMENT**.................................................................2

    **The Fairness Hearing**.............................................3

    **Attorneys' Fees, Costs Application, And Service Awards**...............3

    **Class Action Settlement Terms**...........................4

        **The Class**....................................................4

        **Class Recovery**.........................................4

**ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL**.................5

    **CAFA Notice**.........................................................5

    **Email and Mail Notice**........................................5

    **Claims Procedure, Including Expenses, And Claims Received**...........6

        **No Objections and No Requests For Exclusion**...............6

        **Settlement Checks**....................................6

**THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED**.................7

    **The Settlement Should Be Finally Approved by the Court**...............7

    **The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation**............9

    **The Amount Offered In Settlement**.....................10

    **The Extent of Discovery Completed**....................11

    **The Experience and Views of Class Counsel**..................12

    **The Reaction of Class Members To The Settlement**....................13

    **The Rule 23(e)(2) considerations favor approval.**...........13

**The Notice Program Complied with Rule 23 and Due Process** .........14

**CONCLUSION** ................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Table of Authorities**

**Cases**

*Arthur v. Sallie Mae, Inc*., 10-cv-0198-JLR (W.D. Wash.)....................................10

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979).................................12

*Chavez v. PHC Corp*., No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015).............................................................................................15

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ...............10, 13

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ...............................................................................8

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ................................................8

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998) ................................7, 8

*In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935 (9th Cir. 2011) ........14

*In re Diamond Foods, Inc*., 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014)............................................................................................6

*In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 1517 (S.D. Cal. Jan. 23, 2012) ..........8

*In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436 (E.D. Pa. 2000) ...........11

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................11

*In re Mercury Interactive Corp*., 618 F.3d 988(9th Cir. 2010) ...........................14

*In re Warner Communications Sec. Litig.,* 618 F. Supp. 735 (S.D. N.Y. 1985).8, 12

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935 (9th Cir. Cal. 2011)............................................................................9

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (Cal. 2000) ....................................11

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819 (D. Mass. 1987).............................................................................................8, 12

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950)...................15

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)..8, 11

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*

688 F.2d 615 (9th Cir. 1982) .................................................................7, 10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................15

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................8

*Rose v. Bank of Am. Corp.,* No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ........................................................................................11

*Staton v. Boeing Co*., 327 F.3d 938 (9th Cir. 2003) ................................................7

*Steinfeld v. Discover Fin. Servs*., 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ........................................................................................13

*Stemple*, 2016 U.S. Dist. LEXIS 157207 ................................................................13

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993) ............................8

*Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) ........................................................................................15

*Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ........12

**Statutes**

Fed. R. Civ. Proc. 23(e) ................................................................................7, 8

Federal Rule of Civil Procedure 23(b)(3) ...................................................... passim

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*...............................1

**Other Authorities**

2 *Newberg on Class Actions* (4th Ed. & Supp. 2002) ............................................12

David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552 (1995) ..2

Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010)...........................................................15

*Manual for Complex Lit.,* Fourth § 30.42 ................................................................12

## MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff Moises Serrano ("Plaintiff" or "Mr. Serrano") requests final approval of this proposed class action settlement agreement (the "Settlement Agreement," Dkt. 48-1 Ex. A) with Defendant Open Road Delivery Holdings, Inc. (the "Defendant" or "Amuse").

## I.    INTRODUCTION

This Settlement provides for significant relief for Class Members allegedly harmed by Defendant's telemarketing calling practices.  The Settlement Agreement, reached after extensive adversarial proceedings and an all-day mediation session before Hon. Suzanne Segal (Ret.), provides for a significant financial benefit of a $400,000 common fund to approximately 1,772 Class Members who were called and/or texted by Defendant by an automatic telephone dialing system and after having opted-out of receiving such telemarketing calls and texts.  Class Members do not need to submit a claim form to receive payment and will be paid a pro-rata share of the Settlement Fund based on the number of texts received after costs are deducted.[1]

The Notice Plan approved by the Court has been implemented successfully by the parties and the Court-approved Settlement Administrator, Postlethwaite & Netterville, APAC ("P&N" or "Settlement Administrator"). The Mail Notice was successfully delivered to approximately 95.5% of identified Class Members.  The E-Mail Notice was successfully delivered to approximately 80% of identified Class Members.  Overall, 99.5% of Class Members received notice by either email, mail or both.  The reaction of the Class has been very positive. There are no objections to the settlement. There are also no opt outs of the settlement.

Given that Class Members do not need to submit a claim to receive payment, and that no Class Members have opted out to date, Class Members will receive, on

---

[1] Defined terms are used as defined in the Settlement Agreement.

average, an estimated payment of $138.44.[2]  This is higher than the Court anticipated in its Order Granting Preliminary Approval. *See* Dkt. 51 (the Settlement "result[]s in a payment of approximately $120 to each class member.").   In addition to providing Settlement Class Members with monetary relief, the Settlement incentivizes Defendant and other businesses to comply with the TCPA, which benefits the Settlement Class Members, consumers in general, and compliant competitive businesses. *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance.").  The Settlement is abundantly fair and reasonable and should be finally approved.

## II.    PROCEDURAL HISTORY

Plaintiff moved for preliminary approval of the Settlement on June 2, 2023 Dkt. No. 48. The Court granted preliminary approval on August 11, 2023 and issued a schedule of outstanding dates and deadlines. Dkt. No. 51.  Pursuant to this Court's order granting preliminary approval, Plaintiff filed his motion for Attorney's Fees and Costs on September 20, 2023. Dkt. No. 52.  Plaintiff separately submits this motion for final approval.

## III.   SETTLEMENT

In an earnest attempt to settle the action and avoid the risks inherent in

---

[2] The declaration of Brad Madden has different figures for the amount per class member and the available total for Class Members, but that is because Class Counsel are requesting a lower attorney cost reimbursement than the $10,000 cap.  The result is that Class Members receive slightly more in their pocket than set forth in his declaration.  This plus the sizable reduction in actual administration costs compared with the initial estimate results in a significantly higher per person award than was estimated at preliminary approval and set forth in the Notice.  All of that additional reduction goes to the Class.

proceeding to trial, the parties engaged in a mediation with former Central District Chief Magistrate Judge Suzanne Segal (Ret.).  The Settlement Agreement resulted from extensive arm's length negotiations and a private mediation on April 12, 2023. The parties were ultimately able to resolve the case at this private mediation through Judge Segal's guidance.   The parties also conducted all necessary discovery, including discovery pertaining to the issues of ATDS, prior express consent, internal do-not-call opt outs, class scope, damages, financial viability, and class certification issues.

Despite strong views about both merits and certification issues from both sides, the parties engaged in settlement negotiations, and during the mediation sessions, were able to reach an understanding with the assistance of Judge Segal, the terms of which are memorialized in the Agreement.  As explained below, all of the factors that courts consider weigh in favor final approval of the proposed Settlement. The relief provided by the settlement is significant, particularly given the risk and expense of continued litigation. The settlement ensures that class members are compensated without delay and eliminates the risk of loss at trial or on appeal.  The parties are fully apprised of the strengths and weaknesses of the claims and defenses. Class Counsel have successfully litigated many TCPA cases and fully support the settlement.  And that no class members objected or opted out further supports final approval of the settlement.  Plaintiff requests that the Court finally approve the settlement as fair, reasonable and adequate.

### A.    The Fairness Hearing

At the Fairness Hearing scheduled for December 1, 2023, the Court will decide whether to finally approve the Settlement and whether to grant Class Counsel's request for attorneys' fees, actual litigation costs, and service awards to the Class Representative.

### B.    Attorneys' Fees, Costs Application, And Service Awards

Class Counsel seek $100,000 in attorneys' fees (twenty-five percent of the

Common Fund); litigation costs currently totaling $9,155.50;[3] and a service award in the amount of $10,000 to the Class Representative to be distributed separately from the Class Recovery.

### C.    Class Action Settlement Terms

The significant terms of the Settlement are as follows:

#### 1.    The Class

The "Class" had been previously certified by this Court (Dkt. No. 51) and is defined the same in the Agreement as follows:

> *"All persons in the United States whose phone number appears on the unsub sms master.csv provided in discovery, and who thereafter received a text message from the Happy Cabbage Platform, as delineated in the call logs provided in discovery, between October 3, 2018 to April 12, 2023."*

The Class Period is from October 3, 2018 through April 12, 2023. (*Id.*)  The Class consisted of 1,772 Class Members.  Madden Decl. at ¶ 5.

#### 2.    Class Recovery

The Settlement provides for a significant financial benefit of a $400,000 Common Fund, which will be distributed on a pro rata basis (after the deduction of Class Counsels' fees and costs, administration expenses, and the incentive award) to the all members of the Class, who allegedly were called or texted in violation of the TCPA's do-not-call provisions.  The total *estimated* distributable fund going to Class Members is $245,322.84.  Friedman Decl. ¶ 21.  As of November 3, 2023, P&N has received no opt outs.  Madden Decl. at ¶ 17.  Moreover, class members <u>do not</u> need to submit a claim form to receive payment.  Based on these numbers, it is presently estimated that each Class Member will receive on average approximately $138.44.[4]

---

[3] This is less than the $10,000 forecasted cost subject to the Settlement Agreement and Class Notice.  The residual difference goes to the Class.

[4] The amount awarded to each Class Member will fluctuate up or down from this

P&N will send the settlement checks via U.S. mail within thirty (30) days of receiving approval from counsel to the Parties that judgment has become final.

Class Members shall be advised that the checks must be cashed within one hundred and ninety (90) days.  After the 90-day period for approved Class Members to cash their check has run, the Settlement Administration shall stop payment on all outstanding checks, and any residual amounts left uncashed shall be distributed to cy pres recipient Electronic Privacy Information Center (EPIC).  The Class Recovery shall not revert to Defendant.

## V.    ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

### A.    CAFA Notice

Defendant mailed CAFA notice on June 9, 2023, in compliance with 28 U.S.C. § 1715(b). Madden Decl. ¶ 16.

### B.    Class Notice

P&N complied with the notice procedure set forth in the Preliminary Approval Order.  Defendant's records, produced in discovery, included the email address and telephone number for all Class Members.  These records also included mailing addresses for many Class Members.  For those Class Members whose mailing addresses were not contained in Defendant's records, P&N was able to conduct a reverse-lookup through the other provided information and obtain the mailing address of all Class Members. Madden Decl. ¶¶ 5–7.

Thereafter, P&N coordinated and caused Postcard Notice to be mailed via First-Class Mail to Class Members. *Id.* at ¶ 9.  Prior to mailing notice, P&N updated the Class Member contact information using the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Class Members before mailing the postcard notice. *Id.* at ¶ 10.  P&N successfully executed Postcard

---

average based on the number of texts they received, as set forth in the Settlement Agreement.

Notice mailings to 97.2% of Class Members and supplemental mailings to 1% of Class Members whose initial Postcard Notices were not deliverable but were otherwise able to be located. *Id.* In all, 1,764 Class Members were mailed and/or e-mailed a Notice which was not returned as undeliverable, representing 99.5% of total Class Members. *Id.* at ¶ 15.

### C.    Claims Procedure, Including Expenses, And Claims Received

As indicated above, Class Members were not required to submit a claim to receive payment. *See* Friedman Decl. at ¶ 11. P & N has received no opt outs to date. Madden Decl. at ¶ 17. Thus, checks will be mailed to all Class Members for whom a valid address can be located, which is virtually all of them.

### 1.    No Objections and No Requests For Exclusion

Class Members were permitted to opt-out[5] or to submit an objection. *See id.* The deadline to submit a request for exclusion or object was November 3, 2023. As of November 3, 2023, P&N has received no requests for exclusion, and there are no objections to the Settlement. *Id.* at ¶¶ 17–18. The fact that there are no objections and no exclusion requests out of 1,772 Class Members highly supports the adequacy of the proposed Settlement. *In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.")

### 2.    Settlement Checks

Each Class Member will receive their settlement payment automatically, which will be in an average amount of $138.44, with the total amount paid being estimated at approximately $245,322.84. The Class Recovery is separate from any amount to be paid for attorneys' fees and costs, incentive award, and settlement

---

[5] Under Fed. R. Civ. P. 23(e)(4), the Court may afford an additional opportunity for Class Members to request exclusion from the Settlement.

administration.  P&N will send the settlement checks via U.S. mail after receiving
approval from counsel to the Parties and funding to be received.

## VI.    THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

### A.    The Settlement Should Be Finally Approved by the Court

"Unlike the settlement of most private civil actions, class actions may be
settled only with the approval of the district court." *Officers for Justice v. Civil
Service Comm'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir.
1982). "The court may approve a settlement . . . that would bind class members only
after a hearing and on finding that the settlement . . . is fair, reasonable, and
adequate." Fed. R. Civ. P. 23 (e)(1)(C).  The Court has broad discretion to grant such
approval and should do so where the proposed settlement is "fair, adequate,
reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d
1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a
district court must consider a number of factors, including: 'the strength of plaintiffs'
case; the risk, expense, complexity, and likely duration of further litigation; the risk
of maintaining class action status throughout the trial; the amount offered in
settlement; the extent of discovery completed, and the stage of the proceedings; the
experience and views of counsel; the presence of a governmental participant; and
the reaction of the class members to the proposed settlement.'" *Staton v. Boeing
Co*., 327 F.3d 938, 959 (9th Cir. 2003).  "The relative degree of importance to be
attached to any particular factor will depend upon and be dictated by the nature of
the claim(s) advanced, the type(s) of relief sought, and the unique facts and
circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at
625.  The Court must balance against the continuing risks of litigation and the
immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d

153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

In addition, courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

All of these factors support a finding that the settlement is fair, reasonable, and adequate. Moreover, the Settlement was reached with the assistance of

experienced mediator, Hon. Suzanne Segal (Ret.). *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011). Finally, Class Counsel and the Plaintiff agree that this Settlement is fair and reasonable; among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. Friedman Decl. at ¶¶ 29–39.

### 1.   The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff believes he has a strong case against Defendant, but recognizes the significant risks in litigating it to trial. Defendant Amuse has vigorously contested the claims asserted by Plaintiff in this Litigation from multiple angles, which are described in detail in the declaration of Mr. Friedman. Friedman Decl. ¶¶ 29–39. First, Defendant contested that its dialing system was an ATDS under the TCPA, and that the text messages it sent were not artificial or prerecorded voice messages. This threat was real, as binding case law in the Ninth Circuit supports Defendant's position. Moreover, Defendant contended that it had a comprehensive policy regarding its Do Not Call practices, and so the Section c claims might fail. Defendant additionally shared financial information with Plaintiff during mediation and sufficiently demonstrated that it would not be able to withstand an adverse class judgment and could only afford a modest settlement in order to remain operational.

While both sides strongly believed in the merits of their respective cases, there are clearly numerous palpable risks to both sides in continuing the Litigation. If the Litigation were to continue, challenges would likely be made to any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation. Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment. The law is fluid in many of these areas, which means that inevitably there would be appeals that would drag out for years. In

considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks
of continuing to engage in protracted and contentious litigation, against the benefits
to the Class.  As a result, Class Counsel supports the Settlement and seek its Final
Approval.  *See* Friedman Decl, ¶¶ 39–42.

Considering the potential risks and expenses associated with continued
prosecution of the lawsuit, the probability of appeals by both sides, the certainty of
delay, and the ultimate uncertainty of recovery through continued litigation, the
proposed settlement is fair, reasonable, and adequate. *See Officers for Justice*, 688
F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise;
in exchange for the saving of cost and elimination of risk, the parties each give up
something they might have won had they proceeded with litigation . . .")

## 2.    <u>The Amount Offered In Settlement</u>

As set forth above, Amuse has agreed to pay $400,000 to fund the settlement,
which includes notice and claims administration costs, providing CAFA notice, an
Incentive Award to Plaintiff Moises Serrano in the amount of $10,000 and
attorneys' fees in the amount of $100,000 and reimbursement of litigation costs of
up to $10,000 *See Friedman Decl*, ¶ 12.   Actual Administration costs, while
originally estimated at $65,000, are now estimated to be much lower: $35,521.66.
Thus, $245,322.84 of this Common Fund is estimated to be distributed to Class
Members.  Class Members are not required to submit a claim to receive payment,
and P&N has received no opt outs.   Class Members will receive, on average,
$138.44, with the amount per person being adjusted upwards or downwards based
on the number of text messages they received.

This payment is a significant recovery for Class Members.  The relief afforded
to Settlement Class Members here is <u>substantially more</u> than the relief afforded in
many TCPA class action settlements. *See Couser v. Comenity Bank*, 125 F. Supp.
3d 1034, 1043 (S.D. Cal. 2015) (approximately $13.75 per claimant); *Arthur v. Sallie
Mae, Inc*., 10-cv-0198-JLR (W.D. Wash.) (Class members were to receive between

$20 and $40 dollars per claim); *Rose v. Bank of Am. Corp.,* No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (individual recovery of $20 to $40 per claimant); *Makaron v Enagic USA, Inc.,* Case No. 2:15-cv-05145-DDP-E Dkt. No. 145 (class members who made claims recovered $12 each).  It is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See e.g.,* Nat'l Rural Tele. *Coop v. DIRECTV, Inc.,* 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.,* 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential recovery).

As the *Linder* Court explained, "… it is firmly established that the benefits of certification are not measured by reference to individual recoveries alone. Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce several salutary by-products, including a therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to legitimate business enterprises by curtailing illegitimate [conduct], and avoidance to the judicial process of the burden of multiple litigation involving identical claims." *Linder v. Thrifty Oil Co.,* 23 Cal. 4th 429, 445 (Cal. 2000) (internal quotations omitted).  Thus, the Settlement constitutes a substantial benefit to Class Members.

### 3.    The Extent of Discovery Completed

The parties have actively litigated the action and engaged in full and complete discovery of the relevant issues involved in this litigation, including relating to the ATDS issue, do-not-call procedures, and the size and scope of the Class.  Class Counsel are satisfied that the information provided about the number of cell phones

called and texted is accurate, given that it involved a complete production of all call/text data to Plaintiff's and included the names, emails, and addresses of the vast majority of Class Members. The time and effort spent examining and investigating the claims militate in favor of final approval of the proposed Settlement, as the process strongly indicates that there was no collusion. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

As detailed in the motion for preliminary settlement approval, Dkt. No. 48, the parties engaged conducted considerable discovery prior to counsel for the parties attending an all-day private mediation before the Hon. Suzanne Segal (Ret.). Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications*, 618 F. Supp. at 745.

### 4.    The Experience and Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co*., 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Lit.,* Fourth § 30.42.

It is the considered judgment of Class Counsel experienced in TCPA class action litigation that this settlement is a fair, reasonable and an adequate settlement benefiting Settlement Class Members nationwide. Class Counsel are experienced consumer class action lawyers, particularly as it concerns TCPA class actions. This Settlement was negotiated without collusion by experienced and capable Class Counsel who recommend its approval. Friedman Decl., ¶¶ 7 & 39–42. Given their

experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this TCPA class action, and unequivocally assert that the proposed Settlement should receive final approval.

### 5.    The Reaction of Class Members To The Settlement

To date, there are no objections and no requests for exclusion (Madden Decl., ¶¶ 17–18), which is important in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement here. *See Steinfeld v. Discover Fin. Servs*., 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the [TCPA] Settlement."); *Stemple*, 2016 U.S. Dist. LEXIS 157207 at *7-8 (finding the lack of objections supported approval of the TCPA settlement).   Class Members have universally approved the Settlement.

### 6.    The Rule 23(e)(2) considerations favor approval.

The considerations outlined in Rule 23(e)(2) also support final approval of the settlement.  The first consideration is the adequacy of Plaintiff's and his counsel's representation of the Class. Class Counsel, who have a great deal of experience litigating and settling TCPA class action cases, wholeheartedly support the settlement.  Moreover, Plaintiff and Class Counsel have vigorously pursued the claims of Class Members, conducting substantial discovery and weighing the risks of continued litigation.  This consideration therefore supports approval.

The second consideration also supports approval because the settlement was negotiated at arms' length.  This case involved hard-fought nature of this litigation, and the parties approached settlement discussions in the same way.  None of the "red

1  flags" of potential collusion the Ninth Circuit has identified exist in this case.  *See*
2  *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011)
3  (noting that plaintiffs' counsel may have allowed pursuit of their own self-interest
4  to infect settlement negotiations when they receive a disproportionate portion of the
5  settlement, the parties agree to a "clear sailing" arrangement providing for the
6  payment of attorneys' fees separate and apart from class funds, or the parties agree
7  that any fees not awarded will revert to defendants rather than be added to the class
8  fund).  The fees being requested by Class Counsel are well at the Ninth Circuit's
9  benchmark for common fund settlements.

10      The third consideration — the adequacy of the relief — also supports
11  Settlement.  As discussed above, the estimated $138.44 per Class Member is more
12  than adequate to warrant approval, particularly in light of the costs, risks and delay
13  of trial and appeal. The distribution plan ensures that Settlement Class Members will
14  be treated equitably relative to each other. The Class Recovery will be distributed to
15  all Class Members and does not require a claim form.  The Settlement provides a
16  substantial benefit to Class Members.

17      Finally, Plaintiff addresses the reasonableness of the requested attorneys' fees
18  in the contemporaneous motion.

19  **B. The Notice Program Complied with Rule 23 and Due Process**

20      The notice program approved by the Court and implemented by P&N satisfied
21  the requirements of Rule 23 and due process. Rule 23 provides that "[t]he court must
22  direct notice in a reasonable manner to all class members who would be bound by
23  the proposal."  Fed. R. Civ. P. 23(e)(1).  When the class is certified under Rule
24  23(b)(3), the notice must also be the "best notice practicable under the
25  circumstances, including individual notice to all members who can be identified
26  through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  To comply with
27  constitutional due process standards, the notice must be "reasonably calculated,
28  under all the circumstances, to apprise interested parties of the pendency of the

action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The court-approved notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and described "the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice was written in plain English and included the dates for class members to object and the final approval hearing. *See Chavez v. PHC Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

P&N mailed the Court-approved Notice to 1,740 (98.6%) Class members. Madden Decl. ¶¶ 10. In total, 1,714 Mail Notices were successfully delivered, representing 96.72% of the Settlement Class Members. *Id.* P&N also sent email notices that were received by 1,416 Class Members. *Id.* ¶ 8. The combined notice procedures resulted in 1,763 class members—or 99.49% of the Settlement Class—receiving direct notice of the Settlement. *Id.* at ¶ 15, Tbl. 2. These numbers satisfy due process. *See* Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (recognizing that a reach of between 70-95% is reasonable); *see also, Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

## VII.  CONCLUSION

In sum, the parties have reached this Settlement following extensive arms' length negotiations, with the assistance of an experienced mediator. The Settlement is fair and reasonable to the Class Members who were afforded notice that complies

with due process. For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed class action settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion for Attorneys' Fees and Costs and Service Awards;
- Enter the proposed order of Final Approval of Class Action Settlement and Judgment; and,
- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Date: November 10, 2023                **The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 10th day of November, 2023, with:

United States District Court CM/ECF system

Notification sent electronically on this 10th day of November, 2023, to:

Honorable Judge Stanley Blumenfeld Jr.
United States District Court
Central District of California

And all counsel of record as recorded on the ECF page.


<u>s/Todd M. Friedman</u>
Todd M. Friedman, Esq.