UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOISES SERRANO,<br><br>  Plaintiff,<br><br>v.<br><br>OPEN ROAD DELIVERY HOLDINGS, INC.,<br><br>  Defendant. | Case No. 2:22-cv-07245-SB-AS<br><br>GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS [DKT. NOS. 52 & 53] |

  Plaintiff Moises Serrano, individually and on behalf of others similarly situated, alleges Defendant Open Road Delivery Holding, Inc. violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, when Defendant sent messages to individuals who had opted out of receiving unsolicited messages. *See generally* Dkt. No. 1. On August 11, 2023, the Court preliminary approved the class settlement. Plaintiff now moves, without objection, for final approval of the class action settlement, Dkt. No. 53, and for attorneys' fees and costs, Dkt. No. 52. The Court heard from the parties at the fairness hearing on December 1, 2023. The Court grants the motion for final approval because the settlement is fair, reasonable, and adequate and not a product of collusion. The Court also grants Plaintiff's motion for attorneys' fees and costs.

I.

  The Court preliminarily approved the class on August 11, 2023, as:

All persons in the United States whose phone number appears on the unsub sms master.csv provided in discovery, and who thereafter received a text message from the Happy Cabbage Platform, as

1

delineated in the call logs provided in discovery, between October 3, 2018 to April 12, 2023.

Dkt. No. 51. The terms of the proposed settlement are detailed in the settlement agreement. Dkt. No. 48-1, Ex. A. Generally, under its terms, Defendant agrees to create a settlement fund of $400,000. Id. ¶ 4.1. From this fund, attorneys' fees ($100,000) and costs ($9,155.50), a service award to Plaintiff ($10,000), and administration costs ($35,521.66) will be deducted. Dkt. No. 53-1 ¶ 21. The remainder will then be distributed to class members on a pro rata basis. The total distributable amount is estimated to be $245,322.84. Id. Any residual amount will be given to Electronic Privacy Information Center as the cy pres recipient. Dkt. No. 53 at 5.

Generally, the settlement agreement releases Defendant from liability to class members for all calls and messages sent by Defendant and/or its agents to the proposed class from October 3, 2018, to April 12, 2023. Dkt. No. 48-1, Ex. A ¶¶ 16.1, 16.2. The class members further agree to waive their rights under California Civil Code § 1542. Id. ¶ 16.2.

II.

In preliminarily approving the settlement, the Court evaluated the proposed notice procedure, which included sending notice via mail and e-mail.[1] Defendant turned over in discovery email addresses or phone numbers for all class members. The settlement administrator then conducted a reverse lookup to obtain class members' addresses. Dkt. No. 53-1 at 14. Court approved postcards were then sent out, along with an email to those class members with a known email address. Id. at 14–15. Using both methods, Plaintiff achieved a 99.5% success rate, with only 0.5% of notices being returned as undeliverable. Id. at 17. The settlement administrator also set up a website and a toll-free number to address any questions. Id. at 16–17. The notice provided in this matter complies with the requirements of Federal Rule of Civil Procedure 23 and due process.

The deadline to object or opt-out was November 3, 2023. Id. at 19. As of December 1, 2023, the settlement administrator had received no objections or opt-out requests. Id.

---

[1] The Court incorporates in full its analysis of the 23(e) notice requirements. Dkt. No. 51 § IV.

2

III.

A.

Plaintiff seeks final approval of the settlement with Defendant. Final approval may only be granted if the court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)). The Court's inquiry is guided by several, non-exclusive factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 819 (internal quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)) (the *Hanlon* Factors). "Each factor does not necessarily apply to every class action settlement, and others may also be considered." *Miller v. Wise Co.*, 17-CV-00616-JAK, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).

When settlement is reached prior to formal class certification, a court must also determine whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). In addition to explicit collusion, a court should look for "more subtle signs" that class counsel has acted in its own self-interest or only in the interest of certain class members. *Id.*

B.

The *Hanlon* factors support a finding that the settlement is fair, reasonable, and adequate.

First, the Court evaluates together the strength of Plaintiff's case, the risk of continued litigation, and the settlement amount. To determine if a settlement is

3

fair, the Court must balance the strengths and weaknesses of the plaintiff's case against the risks and expenses of continued litigation. *In re Mego*, 213 F.3d at 458–59. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). No one formula governs the court's determination of the likelihood of the plaintiff's success, which the Ninth Circuit has described as "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Balanced against the risks and expenses of further litigation, the strength of Plaintiff's case justifies approval. Defendant asserts arguments that appear to have merit. Dkt. No. 53 at 9 (acknowledging that "binding case law in the Ninth Circuit supports Defendant's position."); Dkt. No. 53-1 at 9 (stating that the Ninth Circuit has recently interpreted a portion of the TCPA to support Defendant's position). Success on any argument could limit the class members' recovery. Moreover, even if Plaintiff prevailed on all his claims, Defendant disclosed financial documents during mediation demonstrating its inability to pay any potential judgment significantly exceeding the settlement amount. In fact, Defendant has stated that the additional expense of prolonged litigation could lead to insolvency, rendering it unable to satisfy any judgment imposed against it. Consequently, an immediate recovery for the class members is preferable to persisting in litigation that is unlikely to yield a better result. Therefore, the proposed settlement of claims, averaging $138.44 per class member, is fair and adequate. *See In re Mego*, 213 F.3d at 459 (holding that a settlement amounting to "only a fraction of the potential recovery" was fair "given the difficulties in proving the case").

Second, the Court evaluates the extent of discovery and the stage of the proceedings. A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. The parties engaged in targeted discovery in which Plaintiff obtained information relating to possible defenses, the size and scope of the class, and Defendant's finances. The parties also engaged in a full day mediation before the former Chief Magistrate Judge of the Central District of California, the Hon. Suzanne Segal (Ret.). Accordingly, this factor favors settlement.

Third, the Court considers the experience and views of counsel. Where class counsel recommend the proposed terms of settlement, courts are to give its

determination "[g]reat weight," because counsel is "most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. Class counsel has considerable class action experience, including experience specific to claims under the TCPA. *See* Dkt. No. 48-1 at 12–25. Counsel has also litigated this case since its inception and has conducted enough discovery to inform its views on settlement. Counsel supports settlement, Dkt. No. 53 at 12, and its support weighs in favor of approval.

Fourth, the Court considers the presence, if any, of a governmental participant. Since there is no government entity participating in this case, this factor is neutral. *See, e.g.*, *Brown v. CVS Pharmacy, Inc.*, 15-CV-7631-PSG, 2017 WL 3494297, at *5 (C.D. Cal. Apr. 24, 2017) (finding factor neutral and granting final approval).

Finally, the Court examines the reactions of the class members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class [action settlement] are favorable to the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529. No class member has objected to or requested to opt-out of the settlement. This factor favors approval.

The totality of the factors therefore counsels in favor of granting the settlement.

C.

Because no class has been finally approved, the Court next examines whether the settlement is collusive. Signs of collusion include: (1) counsel receiving a disproportionate distribution of the settlement; (2) a "clear-sailing" arrangement under which the defendant agrees not to oppose a request for attorneys' fees under a certain sum; and (3) fees reverting to the defendant instead of going into the class fund. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (referring to the *Bluetooth* factors); *see also In re Bluetooth*, 654 F.3d at 947. Neither the first nor third sign is present: the attorneys are not receiving a disproportionate amount of the settlement, *see In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (stating that 25% is the benchmark for attorneys' fees), and there is no reverter clause in the agreement. The parties have agreed to a clear-sailing provision, however. Dkt. No. 48-1 at 32 (agreeing not to object to a request for attorneys' fees seeking "not more than 25% of the Settlement Fund"). Although the presence of this provision "is not a 'death

5

knell,' the [] court has a duty to scrutinize the agreement for signs that the fees requested by counsel are unreasonably high." *McKinney-Drobnis*, 16 F.4th at 610. Here, Plaintiff seeks the benchmark level that is typically deemed reasonable in such matters (i.e., 25%). *In re Hyundai*, 926 at 570. Nor are there "special circumstances indicat[ing] that the percentage recovery would be either too small or too large," necessitating an adjustment to the benchmark. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Furthermore, the parties negotiated the settlement with a neutral mediator, which weighs "in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948. There is no evidence of collusion.

\* \* \*

Based on its analysis of the applicable factors for final approval, the Court finds that the settlement is "fair, reasonable, and adequate" and not the product of collusion between the parties. *Lane*, 696 F.3d at 818.

IV.

From the gross settlement amount ($400,000), Plaintiff seeks attorneys' fees ($100,000) and costs ($9,155.50), a service award for the class representative ($10,000), and administrative costs for the settlement administrator ($35,521.66).

First, the Court considers the appropriate attorneys' fees to award. Courts may exercise discretion in cases "where a settlement produces a common fund for the benefit of the entire class" and may "employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942. Regardless of which method a court applies, "the Ninth Circuit requires only that fee awards in common fund cases be *reasonable* under the circumstances." *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM, 2008 WL 8150856, at \*8 (C.D. Cal. July 21, 2008) (cleaned up).

As discussed above, counsel seeks the 25% benchmark level for attorneys' fees, which appears reasonable. The requested fee is further supported by a cross-check against a rough estimate of the lodestar value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (noting that a cross-check of the lodestar "can be performed with a less exhaustive cataloguing and review of counsel's hours"). The lodestar is calculated by multiplying the

hours reasonably expended by a reasonable hourly rate determined by the experience of counsel and the prevailing market rate in the community. *In re Bluetooth*, 654 F.3d at 941.

Based on the evidence provided, the lodestar value of the work provided up to the final fairness hearing is $104,090. Counsel and its support staff spent 172 hours on this litigation, which appears to be reasonable on the record presented. As to rates, counsel seeks rates of $900 for Mr. Friedman, a partner with over 20 years of experience, $750 for Mr. Bacon, a partner with over 10 years of experience, $400 for an associate, and $225 for administrative support. Dkt. No. 52-1 at 24–25, 28. Counsel provides evidence that it recently had its rates approved in another court, *id*. at 34, that similar rates have been approved by other courts, *e.g.*, *Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-CV-00278, 2021 WL 4785936, at *9 (N.D. Cal. Feb. 4, 2021) (approving a $1,000 rate for a partner in a consumer class action), and that its rates fall within the applicable schedule in the Laffey Matrix, Dkt. No. 52-1 at 31. Consequently, the lodestar cross-check supports a finding that the attorneys' fees are reasonable.

Second, the Court addresses Plaintiff's costs. Plaintiff seeks costs for filing fees, service of process, travel expenses, and mediation fees. Dkt. No. 52-1 at 24. These are traditional litigation costs and are reasonable here. Moreover, Plaintiff notified the class that up to $10,000 in costs would be sought from the settlement fund, and no one objected. Accordingly, the Court approves the request for litigation costs of $9,155.50.

Third, Plaintiff seeks $10,000 for the class representative. Service awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Awards typically range from $2,000 to $10,000, and a $5,000 award is considered presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–67 (N.D. Cal. 2015).

Plaintiff cites numerous cases that support a $10,000 service award for the class representative. But Plaintiff provides limited information about "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (cleaned up). Given the

low number of hours Plaintiff spent on this matter (20) and the lack of any alleged risk taken as the class representative, Plaintiff has failed to show that he is entitled to more than the presumptive award. The Court therefore grants in part the service award for $5,000.

Finally, Plaintiff seeks $35,521.66 for administrative costs already incurred ($20,573.78) and those anticipated ($14,947.88). Dkt. No. 53-1 at 19. The Court finds this amount reasonable. To the extent final administrative costs are less than the anticipated $14,947.88, the excess costs awarded shall be placed in the class fund and distributed to the class members. In no event shall administrative costs exceed $35,521.66.

V.

For the foregoing reasons, Plaintiff's motion for final approval of the class action settlement and motion for attorneys' fees and costs are GRANTED. The Court awards $100,000 in attorneys' fees, $9,155.50 in litigation costs, $5,000 in a service award to the class representative, and up to $35,521.66 in administrative costs to the settlement administrator to be paid from the settlement fund. The parties are ordered to implement the settlement according to the terms and releases in the agreement and incorporated by reference into this order.

A final judgment dismissing this action with prejudice will be separately entered.

IT IS SO ORDERED.

Date: December 13, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge